IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **UNIVERSITY OF GEORGIA ATHLETIC ASSOCIATION, INC.,**<br><br>    *Plaintiff*,<br><br>v.<br><br>**A nan sticker shop,** *et al.,*<br><br>    *Defendants*. | Civil Action No. 1:25-cv-6151-TWT |

## PRELIMINARY INJUNCTION

This cause comes before the Court following a hearing on Plaintiff's Motion for Preliminary Injunction. The Court previously entered a Temporary Restraining Order and Asset Freeze Order against all Defendants on November 3, 2025. [D.I. 9.] The Court also authorized Plaintiff to serve Defendants by electronic means. [D.I. 10.] In conjunction with the TRO, the Court ordered Defendants to appear at a hearing to demonstrate good cause why a preliminary injunction should not issue. [D.I. 9.] That hearing was held on December 4, 2025, and Defendants failed to appear.

Through the hearing and Plaintiff's associated motion papers, Plaintiff has established:

1. A substantial likelihood of success on the merits of its trademark counterfeiting/infringement claims given that:

    a. Plaintiff owns valid and enforceable federal trademark registrations for Plaintiff's Marks;

    b. the counterfeit/infringing products advertised and offered for sale by Defendants are not authorized by Plaintiff and are not genuine;

    c. Defendants are using spurious marks that are identical with or substantially indistinguishable from one or more of Plaintiff's Marks in commerce on or in connection with the advertising, offering for sale, and/or sale of counterfeit/infringing products; and

    d. Defendants' use of Plaintiff's Marks on or in connection with the advertising, offering for sale, and/or sale of counterfeit/infringing products is likely to cause consumer confusion, mistake, or deception as to the source or origin of the counterfeit/infringing products.

2. Plaintiff will suffer irreparable harm if the injunction does not issue in light of the rebuttable presumption of irreparable harm set forth in 15 U.S.C. §

1116(a).  Moreover, the continued sale of counterfeit/infringing products by Defendants threatens Plaintiff with the loss of control of its reputation and the loss of the considerable goodwill is has established with consumers.

3. The balance of the harms weighs in favor of granting the injunction given that the threatened injury to Plaintiff's reputation and goodwill absent an injunction outweighs any potential financial harm that Defendants may suffer as a result of the injunction.

4. The requested injunction would serve the public interest. Avoidance of consumer confusion is always in the public interest, particularly when consumers are being misled as to the quality, source, and composition of counterfeit/infringing products, many of which do not comply with applicable product safety, manufacturing, or labeling requirements.

Accordingly, Plaintiff has established to the satisfaction of this Court that equitable relief in the form of a preliminary injunction is warranted, and Defendants have failed to show good cause why a preliminary injunction should not issue. Therefore, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Request for Preliminary Injunction is **GRANTED** as to all Defendants as follows:

1) For the duration of this action, each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order is hereby ordered to:

    a) cease and refrain from manufacturing, advertising, offering for sale, selling, distributing, destroying, selling off, transferring, or otherwise disposing of any counterfeit/infringing products;

    b) cease and refrain from manufacturing, advertising, offering to sell, selling, reproducing, or distributing any goods bearing Plaintiff's Marks, or any confusingly similar trademarks, other than genuine products manufactured or distributed by Plaintiff or its authorized manufacturers and distributors;

    c) cease and refrain from destroying, selling off, transferring, or otherwise disposing of any documents, electronically stored information, or financial records or assets of any kind relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any counterfeit/infringing products;

    d) cease and refrain from using Plaintiff's Marks, or any confusingly similar trademarks, on or in connection with any virtual

4

storefront that any Defendant may own, operate, or control on any online marketplace;

e) cease and refrain from any and all use of Plaintiff's marks, or any confusingly similar trademarks, as metatags, on any webpage (including the title of any web page), in any advertising links to other websites, from search engines' databases or cache memory, or any other form of use of such terms that are visible to a computer user or serves to direct computer searches to virtual storefronts registered, owned or operated by any Defendant on any Marketplace; and

f) cease and refrain from altering, disabling, closing, or transferring ownership of any virtual storefront on any online marketplace during the pendency of this Action, or until further Order of the Court.

2) For the duration of this action, each Defendant must preserve all documents and electronically stored information arising from or related to its sale, offer for sale, distribution, and advertising of counterfeit/infringing products through its virtual storefronts located on the online marketplaces.

3) For the duration of this action, all Financial Institutions (as defined in Plaintiff's motion) that receive actual notice of this Order shall continue to attach

and freeze all funds in any accounts owned, controlled, utilized by, or associated with Defendants and otherwise prohibit the transfer of any funds out of any such accounts and divert any frozen funds and any additional funds that may be transferred into the accounts into a holding account at the marketplace or the respective Financial Institution for the trust of the Court, with such frozen funds and/or holding accounts being held, maintained, and/or located exclusively within the United States.

4) No funds restrained by this Order shall be transferred or surrendered by any Financial Institution or online marketplace for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of the Court.

5) For the duration of this action and upon receipt of actual notice of this Order, each online marketplace on which a Defendant maintains a virtual storefront or account shall continue to freeze all funds held or received by the marketplace for any Defendant's benefit and disable each Defendant's virtual storefronts on the marketplaces and any accounts associated with each Defendant and cease providing any services to Defendants.

6) Plaintiff may notify the marketplaces and Financial Institutions of this Order by electronic means, including by electronic mail.

7) This Order shall remain in effect for the duration of this action and until such time as a final judgment is entered.

8) This Order shall apply to Defendants, their associated virtual storefronts on the marketplaces, and any other websites, domain names, seller identification names, e-commerce stores, or Financial Institution accounts which are being used by Defendants for the purpose of advertising, offering for sale, and selling any counterfeit/infringing products at issue in this action and/or unfairly competing with Plaintiff.

9) The Court's previous Temporary Restraining Order, Asset Freeze Order, and Order to Show Cause (D.I. 9) is **dissolved and is replaced by this Preliminary Injunction Order which is hereafter in effect.**

**IT IS SO ORDERED** this __4th__ day of December, 2025.

_____
**THOMAS W. THRASH, JR.
UNITED STATES DISTRICT JUDGE**